# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JESSE L. HERRMANN,**

        **Petitioner,**

        v.                                      Case No. 16-CV-1353

**MICHAEL MEISNER,**[1]

        **Respondent.**

---

## REPORT AND RECOMMENDATION

---

### 1. Background

Jesse L. Herrmann killed one young woman and severely injured four others when he slammed his pickup truck into the back of their car as they waited to make a left turn. *State v. Herrmann*, 2015 WI 84, ¶5, 364 Wis. 2d 336, 867 N.W.2d 772. The collision was so severe that the grill of Herrmann's truck ended up in the back seat of the car where three

---

[1] Herrmann is incarcerated at the Redgranite Correctional Institution. *See* Offender Locator, Wisconsin Department of Corrections, available at https://appsdoc.wi.gov/lop/detail.do (last visited Aug. 9, 2019). The warden of that institution is Michael Meisner. *See* https://doc.wi.gov/Pages/OffenderInformation/ AdultInstitutions/RedgraniteCorrectionalInstitution.aspx. In accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly. At the time he filed this petition, Herrmann was incarcerated at Green Bay Correctional Institution. Therefore, venue is proper in this district. 28 U.S.C. § 2241(d).

of the young women were sitting. *Id.*, ¶ 6. Herrmann ran from the scene but was detained by bystanders until police arrived. *Id.*

Officers determined that Herrmann was drunk—very drunk—with a blood alcohol concentration of 0.215 after the crash. *Id.* The state charged Herrmann with various crimes, and he pled guilty to homicide by intoxicated use of a vehicle, four felony counts of causing injury by intoxicated use of a motor vehicle (two violations of each Wis. Stat. §§ 346.63(2)(a)1 and 940.25(1)(a)), and hit and run involving death (ECF No. 8-1.) The charges were enhanced because it was his second drunk driving offense and because he was a repeat criminal offender. (ECF No. 8-1 at 1.)

Following a lengthy and emotional sentencing hearing at which many of the direct and indirect victims of Herrmann's crimes asked that he be sentenced to the maximum penalty, and at which his friends and family begged for leniency, La Crosse County Circuit Court Judge Ramona Gonzalez sentenced Herrmann to a total term of initial confinement of 31 years to be followed by 40 years of extended supervision. *Herrmann*, 2015 WI 84, ¶20; (ECF No. 8-1 at 1.) In imposing sentence, Judge Gonzalez noted that Herrmann had an extensive criminal record and had variously previously received probation, prison, drug and alcohol treatment, fines, and supervision, but none of it had changed his behavior. She highlighted his lack of responsibility—that he turned to alcohol for his problems, that he failed to take advantage of counselling and treatment

services and even dismissed their value, and that he failed to maintain any insurance. (ECF No. 8-3 at 132, 134-35.)

Judge Gonzalez also spent significant time discussing how crimes such as Herrmann's affect the community. She discussed a similar recent drunk driving case. (ECF No. 8-3 at 126.) And she highlighted the "ripple effect" of Herrmann's offenses and how they impact not only the five friends who were in the car into which Herrmann slammed but their families, friends, acquaintances, and even the witnesses to the crash and those who responded to assist, as well as the impact on Herrmann's family and friends. (ECF No. 8-3 at 133.) It was in conjunction with this discussion of how drunk driving crimes affect the greater community that she offered the following:

> In 1976 five young women got into a vehicle, and only one of them survived. The two gentlemen in the other vehicle were 17, drunk out of their minds, and they did not survive. That was my personal story, and I will tell you that a day does not go by that I do not think of that personal tragedy, and I wish that I could tell these victims that that pain will one day disappear, but it doesn't. Time makes it less. We redirect ourselves to other things, and a day does go by when we don't think of our loved ones and then we feel guilty at night because that happened, but life does go on, and I am very grateful today that I'm looking at four lovely young ladies and that only one family has to go through the pain that my family and the other three young ladies' families had to endure in 1976.
>
> And so perhaps it is again destiny or a higher power or, Pastor, probably the prayers of many others that bring me to be the judge on this particular case because I probably more than anyone else who would be able to sit on this bench in this county understand the pain that these victims are feeling, but I have had the benefit of all those years since 1976 to understand that I have to make Mr. Herrmann pay, but that nothing I do to him will lessen that pain, and that if I don't do more than just incarcerate Mr. Herrmann, if I don't speak out on behalf of my community today, then this tragedy will

3

> continue to happen on our streets, and more families will suffer the way these families suffer today.
>
> So, Mr. Herrmann, you're going to prison today, but that's just part of the story….

(ECF No. 8-3 at 128-29.)

Judge Gonzalez was referring to the death of her sister from a drunk driver 35 years earlier. She disclosed her personal loss at the beginning of the sentencing hearing, saying:

> Mr. Herrmann, there is a matter that I'd like to put on the record again just before we begin. It's not a secret that I lost a sister to a drunk driver in the summer of 1976. I made this known. I don't believe that this will have any impact on my ability to set that aside and sentence you based upon the information presented on your case and not my sister's case, but I want you to understand right off the get-go that that is something that I have very zealously tried to set aside, and I do believe that I am able to do that. If you have any issues or questions that you want to ask relative to that, you're certainly welcome to ask them now.

(ECF No. 8-3 at 54.) Herrmann responded that he had no questions and, when asked if there were any problems with her proceeding, Herrmann's attorney responded, "No problems." (ECF No. 8-3 at 54.)

Nonetheless, Herrmann appealed, arguing that Judge Gonzalez's personal experience and comments evidenced that she was objectively biased, thereby violating his right to due process. The Wisconsin Court of Appeals and Wisconsin Supreme Court disagreed and affirmed his sentence. (ECF Nos. 1-1; 1-2); *State v. Herrmann*, 2015 WI 84, 364 Wis. 2d 336, 867 N.W.2d 772; *State v. Herrmann*, 2014 WI App 38, 353 Wis. 2d 304, 844

4

N.W.2d 665, 2014 Wisc. App. LEXIS 124 (2014) (unpublished). He now seeks a writ of habeas corpus from this court.

2. **Legal Standard**

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

3. **Analysis**

There is a presumption that judges act with honesty and integrity. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Consequently, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)). Of course, the Due Process Clause guarantees "'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *In re Murchison*, 349 U. S. 133, 136 (1955)). But actual bias is difficult to prove, and therefore "[t]he Court asks

5

not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is likely' to be neutral, or whether there is an unconstitutional potential for bias.'" *Id.* (internal quotation marks omitted) (quoting *Caperton*, 556 U.S., at 881).

Thus, "a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case." *Caperton*, 556 U.S. at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 520 (1927)). And a judge may not preside over a criminal contempt proceeding when the alleged contempt was directed personally at the judge. *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971).

Beyond these firm guideposts, the Supreme Court has found recusal required in a handful of other situations. For example, the Court held that recusal was required "when the judge's decision in a related case 'had the clear and immediate effect of enhancing both the legal status and the settlement value of his own case.'" *Caperton*, 556 U.S. at 891-92 (Roberts, C.J., dissenting) (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824). Additionally, "a defendant's due process rights are violated when he is tried before a judge who is 'paid for his service only when he convicts the defendant.'" *Id.* (quoting *Tumey*, 273 U.S. at 531).

In *Caperton*, a jury ordered a coal company to pay $50 million. *Id.* at 873. Anticipating that the coal company's appeal of the judgment would reach the Supreme Court of Appeals of West Virginia, the coal company's chairman financially backed an

attorney seeking to unseat a justice on that court. *Id.* The chairman's contributions totaled $3 million, which was more than that spent by all of the candidate's other supporters combined, and more than $1 million more than the combined total spent by both candidates' campaign committees. *Id.* The coal company's candidate won the election, refused repeated requests to recuse himself from the case, and eventually cast the deciding vote overturning the judgment. *Id.* The Supreme Court held that the company chairman's outsized role in supporting the election of the justice, whom he knew would be reviewing the massive judgment against his company, created "a serious, objective risk of actual bias that required [the justice's] recusal." *Id.* at 886.

In a subsequent case the Supreme Court held that due process required an appellate judge to recuse himself when he had been the district attorney who approved the pursuit of the death penalty against the defendant. Specifically, it held that "under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams*, 136 S. Ct. at 1905.

The Supreme Court has synthesized its precedents in subtly different ways. For example, it characterized the relevant inquiry as "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the [judge's] interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Caperton*, 556 U.S. at 883-84 (quoting *Withrow*,

7

421 U.S. at 47). It offered the more general view that recusal is required when, objectively, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* at 872 (quoting *Withrow*, 421 U.S. at 47). It also stated the relevant question is whether "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Williams*, 136 S. Ct. at 1905.

Notably, the Court has never held that a judge must recuse herself because a family member was a victim of a similar crime. Thus, Herrmann cannot show that the Wisconsin Supreme Court's decision was "contrary to" clearly established federal law. He implicitly concedes as much. (*See* ECF No. 13 at 3 ("*Caperton* is factually different from this case.").) Rather, he may prevail, if at all, only if he can show that the Wisconsin Supreme Court's decision "involved an unreasonable application of" clearly established federal law.

The court finds that the Wisconsin Supreme Court reasonably applied federal law, as determined by the United States Supreme Court, to conclude that due process did not require Judge Gonzalez to recuse herself. Only in the most extreme instances will recusal be constitutionally required; statutes and rules of judicial ethics set the ordinary bounds of when a judge may preside. This by itself creates a high obstacle for a litigant to obtain relief by way of the due process clause. The obstacle is doubly high for Herrmann given the deferential standard of review that applies to a federal court's review of state court decisions under 28 U.S.C. § 2254. This was not an extreme case of alleged bias. Consequently, the court cannot say that what happened here was the sort of "extreme

malfunction[] in the state criminal justice system[]" which federal habeas relief protects against. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The statements made by Judge Gonzalez about her sister may have been poignant and personal, but ultimately they were not unlike the sorts of statements judges routinely make at sentencings. Judging to some degree, but sentencing in particular, is a job performed in light of experience, both personal and professional. "It is neither possible nor desirable for a person to whom the State entrusts an important judgment to decide in a vacuum, as if he had no experiences." *Barclay v. Florida*, 463 U.S. 939, 950 (1983). Expecting a judge to shut out her personal experiences is inconsistent with human nature. Prohibiting judges from sharing those experiences when relevant would handicap judges from being able to honestly explain the basis for their decisions, which would in turn undermine public understanding for those decisions. The Supreme Court has "never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors. But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that." *Id*. Experience is not bias, and it is certainly not evidence of the sort of extraordinary risk of bias against which the due process clause provides protection.

Significant is the context in which Judge Gonzalez offered the comments that Herrmann now argues reflect her unconstitutional bias. She stated she was "speak[ing] out on behalf of my community …" (ECF No. 8-3 at 129), and commented specifically on

9

how drunk driving affects both the direct victims and the broader community. A judge speaking out on behalf of the community she was elected to serve is wholly consistent with the judge's role, justice, and due process.

It was in conjunction with this discussion that Judge Gonzalez noted two other instances of drunk driving resulting in the deaths of young women. The first was a similar case in the community where a young woman was killed by a drunk driver. (ECF No. 8-3 at 126.) She noted that the defendant in that case was "about as opposite from Mr. Herrmann as we could get. Law abiding, family man, married his home town – his high school sweetheart, has a job, member of the faith community, member of the community." (ECF No. 8-3 at 126.) That defendant was sentenced to eight years of initial confinement. (ECF No. 8-3 at 132.) Comparing him to Herrmann, the court found far too short the 15 years recommended in the alternative presentence investigation Herrmann had prepared. (ECF No. 8-3 at 132.)

The second similar instance that Judge Gonzalez noted was the death of her sister. In commenting on her personal experience, she was expressing her empathy for the victims of Herrmann's crimes in the most sincere and credible way. Far from inappropriate, the Wisconsin legislature codified the policy that crime victims are to be considered at all stages of the criminal process, *see generally* Wis. Stat. ch. 950. When she spoke of her experience and said she "understand[s] the pain that these victims are feeling" (ECF No. 8-3 at 129), Judge Gonzalez made clear that she was considering those

10

victims. But she also appropriately considered all other relevant factors, including the circumstances of the crime and Herrmann's personal characteristics and history. In fact, "Herrmann readily concedes that aside from the bias-evincing remarks, the judge did what the law required of her at a sentencing hearing." (ECF No. 11 at 25.)

It was in this context—expressing her ability to empathize with the victims and not an intention to vindictively punish Herrmann—that she referred to "destiny," "a higher power" or "prayers" as being how she came to be the judge in this case. (ECF No. 8-3 at 128-29.) She was undisputedly able to consider how these victims were impacted by the crime. Judge Gonzalez did not abandon her role as a judge. Rather, she exercised it with a level of compassion for the victims and an awareness of the collateral consequences of drunk driving not often expressed in the sentencing proceedings that too many judges reduce to rote.

The implication in Herrmann's challenge to his sentence is that a judge in Judge Gonzalez's position would have been better off saying nothing and not expressing her personal experience. (*See* ECF No. 11 at 21 ("What disqualified the judge in this case was not the bare fact that she lost her sister to a drunk driver in 1976. What disqualified her was that she felt compelled to talk about her personal tragedy while sentencing Mr. Herrmann ….").) This would be an unfortunate lesson for judges. Judge Gonzalez surely would have been no less affected by her personal experiences had they gone unexpressed. Anyone would assume, whether she expressed it or not, that the impact on Judge

Gonzalez's family was devastating and that, even 35 years later, her sister is not out of her mind. But had Judge Gonzalez not offered her powerful personal view, perhaps the routine words of sympathy that courts express to victims of crimes would have rung a little more hollow. Judge Gonzalez was sincere and honest, and one hopes her expressions offered some comfort to the victims.

Perhaps there are certain extreme circumstances in which a judge's personal experiences may constitutionally require recusal. But the Supreme Court has never recognized any. Specifically, the Court has never held that due process requires a judge recuse herself from sentencing a defendant because she has been affected by a similar crime. Herrmann has not identified any case in which a federal court granted habeas relief under similar circumstances. And the court's own research fails to reveal any. However, the court has identified cases in which courts *rejected* similar claims. *See, e.g.*, *Mann v. Thalacker*, 246 F.3d 1092, 1097 (8th Cir. 2001) (reversing district court's grant of habeas relief and holding that judge's sexual assault as a child did not make her unconstitutionally biased against defendant convicted of sexual assault); *Barber v. Gladden*, 327 F.2d 101, 104 (9th Cir. 1964) (rejecting claim of bias where sentencing judge discussed "a boyhood experience wherein safecrackers had robbed and shot at the judge's father" and petitioner was convicted of a similar crime); *Gray v. Beard*, No. 2:11-cv-2974-JKS, 2013 U.S. Dist. LEXIS 157132, at *30-31 (E.D. Cal. Oct. 31, 2013) (rejecting claim that judge was required to recuse herself in petitioner's domestic violence case

because judge had previously sought a protective order against her son); *Searle v. Rapelje*, No. 2:09-CV-13369, 2011 U.S. Dist. LEXIS 100298, at *14-18 (E.D. Mich. Sep. 7, 2011) (rejecting habeas claim that petitioner's due process rights were violated when petitioner was convicted of arson resulting in the deaths of 18 horses and judge at sentencing referred to his experience growing up on a farm with horses); *Andrews v. Davis*, No. 07-14917, 2010 U.S. Dist. LEXIS 112174, at *38 (E.D. Mich. Oct. 20, 2010) (rejecting claim of bias founded on the fact that "[t]he trial court commented on his personal experience with bipolar disorder, based on his own son having suffered from the same disorder, before declining to take petitioner's bipolar condition into account at sentencing"); *Welch v. Burke*, 49 F. Supp. 2d 992, 1008-09 (E.D. Mich. 1999) (rejecting claim that judge was biased in sentencing him for murder because he "considered the death of his own child and sympathized with the victim's family when imposing the sentence"); *cf. Martinez v. Stridiron*, 538 F. App'x 184, 188-89 (3d Cir. 2013) (rejecting habeas claim that petitioner's due process rights were violated when defendant killed the niece of the sentencing judge's bailiff); *Greenway v. Schriro*, 653 F.3d 790, 807 (9th Cir. 2011) (rejecting habeas claim based on the fact that the judge who sentenced petitioner to death had been a police officer 18 years before trial and worked briefly with the ex-husband / father of the two murder victims).

**IT IS THEREFORE RECOMMENDED** that Jesse L. Herrmann's petition for a writ of habeas corpus be denied.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal

Dated at Milwaukee, Wisconsin this 9th day of August, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge